UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

v.   Criminal Action No.:3:15-cr-00022-MPM-SAA-1

GRAEME PHILLIP HARRIS

### ORDER SUSTAINING OBJECTION TO PRE-SENTENCING REPORT

This matter comes before the Court upon the *Objection to Pre-sentencing Report* (the "Objection") filed on behalf of defendant Graeme Phillip Harris (the "Defendant"). The Objection, filed in response to the Presentencing Report (the "Report") submitted on behalf of the United States (the "Government") by the U.S. Probation Office ("Probation"), initially raised six separate objections to the Report. All but two of the objections have been resolved by agreement of the parties.

The Defendant in this case has pleaded guilty to violations of 18 U.S.C. §§ 2 and 245(b)(2)(A) & (C). Violations of these statutes implicate Federal Sentencing Guideline §2H1.1. Application Note 4 of §2H1.1 provides for an upward departure from baseline sentencing guidelines in instances where the defendant "…intentionally selected any victim or any property as the object of the offense because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person…" FCJ Federal Sentencing Guidelines Manual § 2H1.1 (11/1/14). As stated in the Objection, the Defendant asserts that application of the additional enhancement would be inappropriate in this case, as the underlying offense already takes the race of the victim into account. The Defendant posits that application of the enhancement would erroneously punish him twice for the same conduct. This Court agrees.

1

## I.  BACKGROUND

On the evening of February 15, 2014, the Defendant, along with his friends Austin Edenfield and Arthur McCarty (hereinafter, "Accomplices") excessively consumed alcoholic beverages while at the Sigma Phi Epsilon fraternity house on the University of Mississippi campus.  As the evening wore on, the Defendant decided he wanted to "create a sensation on campus using a Confederate flag."  Their courage enhanced and their inhibitions stunted by alcohol, the Defendant and Accomplices stumbled under cover of darkness from the fraternity house to the James Meredith statue, standing between the Lyceum and the library.  There, they draped an old Georgia state flag, which is partially comprised of a Confederate battle flag, and hung a rope around the neck of the statue.  They then retreated.

About sunrise on February 16, 2015, the Defendant and accomplice Edenfield returned to the statue "to see what it looked like in the daylight."  They were videotaped walking by the student union together and a plumbing contractor observed two young white males walking in the vicinity of the statue, shouting racially charged obscenities.  The contract employee gave a physical description of the young men which matched the descriptions of the Defendant and accomplice. The defaced statue was initially discovered by a university grounds keeper who realized the significance of what he had found and immediately reported the matter to the university police department.

The Defendant and Accomplices knew the statue to be iconic, as Mr. Meredith was the first African-American student admitted to the then segregated University of Mississippi.  They chose the statue for this reason.  In an apology letter the Defendant subsequently wrote to Mr. Meredith, he cited their motive for placing the flag on the statue was in part a response to former Chancellor Dan Jones having replaced the "Colonel Reb" mascot with a black bear mascot.

2

After University authorities and federal law enforcement officers began investigating the incident, Accomplices Edenfield and McCarty came forward and admitted their involvement in the incident, and agreed to cooperate and testify. Sometime thereafter, the Defendant was arrested for his involvement in the incident.

On March 25, 2015, the Defendant was named in a two-count indictment filed in the Northern District of Mississippi. Count I of the indictment charged the Defendant with knowingly and willfully conspiring with at least one other person to injure, oppress, threaten, and intimidate African-American students and staff at the University of Mississippi, a publicly-funded institution of higher learning, in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to pursue and enjoy a public education free from racial violence and intimidation from the threat of racial violence, all such actions of the Defendant and conspirators being in violation of 18 U.S.C. § 241. Count II of the indictment charged the Defendant, aided and abetted by others and by threat of force, with knowingly and willfully intimidating , interfering, and attempting to intimidate and interfere with African-American students and staff at the University of Mississippi, a publicly-funded school, because of their race and color and because they were attending, enrolled in, and employed by the University of Mississippi, by hanging a rope and Georgia state flag containing the Confederate battle flag around the neck of the statue of James Meredith, an iconic symbol of the civil rights movement at the University of Mississippi, all in violation of 18 U.S.C. §§ 2 and 245(b)(2)(A) & (C).

On June 18, 2015, the Defendant pleaded guilty to Count II of the indictment. Pursuant to a written plea agreement, the government agreed not to charge the Defendant with any other

3

or greater offenses relating to the conduct set forth in the Indictment and further agreed to dismiss Count I of the Indictment upon conclusion of sentencing.

## II. CONCLUSIONS OF LAW

Pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure, a Plea Agreement [20] was submitted to the Court on behalf of the Defendant and the Government. As stated above, the Defendant agreed to plead guilty under Count II of the Indictment, charging him with violations of 18 U.S.C. §§ 2 and 245(b)(2)(A) & (C). Those statutes provide as follows:

18 U.S.C. §2

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. §245(b)(2)(A)

(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—
    (2) any person because of his race, color, religion or national origin and because he is or has been--
    (A) enrolling in or attending any public school or public college.

18 U.S.C. §245(b)(2)(C)

(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—
    (2) any person because of his race, color, religion or national origin and because he is or has been--
    (C) applying for or enjoying employment, or any perquisite thereof, by any private employer or any agency of any State or subdivision thereof, or joining or using the services or advantages of any labor organization, hiring hall, or employment agency;

The misdemeanor carries maximum possible penalties of not more than 1 year imprisonment, not more than $100,000.00 fine, not more than 1 year supervised release, and a special assessment of $25.

Violations of the above-cited statutes implicate Federal Sentencing Guideline §2H1.1, which provides as follows:

> (a) Base Offense Level (Apply the Greatest):
>     (1) the offense level from the offense guideline applicable to any underlying offense;
>     (2) 12, if the offense involved two or more participants;
>     (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or
>     (4) 6, otherwise.
> (b) Specific Offense Characteristic
>     (1) If (A) the defendant was a public official at the time of the offense; or (B) the offense was committed under color of law, increase by 6 levels.

FCJ Federal Sentencing Guidelines Manual § 2H1.1 (11/1/14).

Application Note 4 of § 2H1.1 further provides:

> 4. If the finder of fact at trial or, in the case of a plea of guilty or nolo contendere, the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person, an additional 3-level enhancement from § 3A1.1(a) will apply. An adjustment from § 3A1.1(a) will not apply, however, if a 6-level adjustment from § 2H1.1(b) applies. See § 3A1.1(c).

FCJ Federal Sentencing Guidelines Manual § 2H1.1 (11/1/14) ("Note 4").

Of the six objections originally raised by the Defendant, only two remain, both relating to application of the upward adjustment contained in Note 4. The objections are as follows:

> Objection 2: The Defendant objects to the addition of a victim related 3 level adjustment on the basis of race since "race and color of victims" is the fourth required statutory element of the underlying offense with which the Defendant is charged. The Defendant asserts that the base offense level of 12 for the indicted offence would thus

5

assume, presume or presuppose, and thus include the essential statutory ingredient of "race or color." Otherwise, the Defendant alleges he is being punished twice for the same conduct in violation of his due process.

Objection 6: The Defendant objects to Paragraph 56 which makes reference to the applicable guideline range being in Zone C and the Defendant not being eligible for probation. Defendant submits that – pursuant to their position as stated in Objection 2 – the guideline range should be no less than a Zone B.

### A. Application of Sentencing Guidelines in General

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable [Sentencing] Guidelines range." *Gall v. United States,* 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). From there, the Court should then consider all of the factors enumerated in 18 U.S.C. § 3553(a) and "make an individualized assessment based on the facts presented." *Id.* It is against this framework that the Court considers the present Objection.

### B. "Duplicative" Sentencing

The primary question to be resolved at this stage in the sentencing process is whether application of the upward adjustment is appropriate, given that the underlying offense already takes the element of race into account. As the Fifth Circuit Court of Appeals does not appear to have addressed the question directly, the Court looks to other Circuit Courts of Appeal for guidance.

In *U.S. v. Weems*, 517 F.3d 1027 (8th Cir. 2008), the Eighth Circuit Court of Appeals appears to reject the sentencing adjustment proposed by Probation in this case. In *Weems*, the Defendants were convicted under 18 U.S.C. § 241 for conspiring to threaten and intimidate an African-American man in the exercise of his housing rights. In sentencing, the district court

declined to apply the three-level enhancement for hate crime motivation. However, on appeal, the Court of Appeals found that the district erred in not applying the enhancement. The court held that "[a]pplying the hate crime motivation enhancement for a violation of 18 U.S.C. § 241 *is not duplicative because the race of the victim is not an element of § 241, and is not incorporated in the applicable base offense level.*" *Id*. at 1030 (emphasis supplied). Although *Weems* did not deal with U.S.S.G. §2H1.1 (but rather U.S.S.G. § 3A1.1(a)), the court does cite to §2H1.1 in support of the proposition/suggestion that sentencing enhancements are inappropriate when the underlying offense and proposed enhancement share a common element. *Id*.

     A prior Eighth Circuit case, referenced by *Weems* in support of the findings regarding sentencing, also dealt with a similar "duplicative" sentencing argument. *U.S. v. McDermott*, 29 F.3d 404, 411 (8th Cir. 1994). In *McDermott*, the appellant-criminal defendants objected to application of "vulnerable victim" enhancement under § 3A1.1(a) on the grounds of being duplicative, as "blacks are the typical victims of a section 241 crime." *Id*. In *McDermott*, the court squarely rejected the argument advanced by the defendants, pointing out that the specific argument had already been rejected by the Ninth and Sixth Circuits. Admittedly, the *McDermott* court did not undertake any substantive exploration of the argument, nor an explanation for the rejection of it.

     The Ninth and Sixth Circuit cases referenced by *McDermott*, however, *do* seem to turn on whether or not the enhancement relates to conduct already accounted for in the underlying offense. In *U.S. v. Skillman*, 922 F.2d 1370, 1377 (9th Cir. 1990), the court found that application of the "vulnerable victim" adjustment was appropriate, as the three underlying offenses of that case did not already incorporate the factor of victim vulnerability. *Id*. (finding that "[t]here are three Guidelines used to derive the offense level… There is nothing in any of the

7

three Guidelines applied in this case that incorporates an enhancement for victims that are particularly susceptible to the criminal conduct."). Similarly, in *U.S. v. Salyer*, 893 F.2d 113 (6th Cir. 1989) (also dealing with 18 U.S.C. § 241), the court found that the victims' race was not incorporated into the definition of civil rights conspiracy, and thus, the victims' race permitted two-level adjustment of base offense level under sentencing guideline for victim vulnerability in civil rights conspiracy prosecution arising out of cross burning.

The race enhancement was applied in at least one case within the Fifth Circuit where a defendant pleaded guilty to violations of 18 U.S.C. § 245(b)(2)(A). *See U.S. v. Johnson*, 2012 WL 1428890 (W.D. La. Apr. 20, 2012). In that case "the Magistrate Judge concluded that [defendant's] offense level was appropriately enhanced three levels under U.S.S.G. § 2H1.1 because he targeted the victims on the basis of their race." *Id*. at *2. However, in the sentencing appeal filed by the Defendant, the question of duplicative sentencing was never raised, and therefore was never considered by the District Court. Although the Judgment of the Magistrate Judge was affirmed, this Court finds that the case insufficiently addresses the sentencing concerns the Court presently faces. Accordingly, this Court finds the logic and reasoning of the Sixth, Eighth and Ninth Circuit Courts of Appeals on this issue most compelling.

### C. Application of Sentencing Guidelines to the Present Case

In applying the above line of legal reasoning to the case at hand – as well as taking into account the considerations contained in 18 U.S.C. § 3553 – the Court finds that the 3-level upward enhancement is inappropriate.

There are five essential elements which must be proved to show a violation of 18 U.S.C. § 245(b)(2)(A) and (C):

(1) That, aided and abetted by others, the defendant's action constituted a threat of force;

(2) That by those actions, defendant intimidated or interfered with one or more of the victims;
(3) That, at the time alleged in the indictment, the victims were either enrolled in and attending a public school or college, or were employed by the public school or college;
(4) That the defendant acted, at least in part, because of the race or color of the victims' and
(5) That the defendant acted knowingly and willfully.

There is no question that the race of the victim (or a defendant's selection of a potential object or victim based on race) is a fundamental element of 18 U.S.C. §245(b)(2)(A). There is also no question that the Defendant and his Accomplices selected the James Meredith statue as the target of their actions specifically because of Mr. Meredith's iconic status as the first African-American student enrolled at the University of Mississippi. This type of "race motivated targeting" is the type of behavior Note 4 attempts to address. Nevertheless, the application of Note 4 upward enhancement is inappropriate in this case. If the underlying offense did not already take race into account, there would be no question that the enhancement applied. However, because a fundamental element of §245(b)(2)(A) is "that the defendant acted, at least in part, because of the race or color of the victim," application of the enhancement in this instance would be duplicative, and, in effect, would penalize the Defendant twice for the same heinous conduct. Accordingly, for the reasons set forth above, it is hereby,

ORDERED, that Defendant's Objections (2) and (6) are hereby SUSTAINED, and the above-referenced sentencing enhancement shall not apply.

SO ORDERED this the 14th day of September, 2015.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

9

Case: 3:15-cr-00022-MPM-SAA Doc #: 29 Filed: 09/14/15 10 of 10 PageID #: 97